IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

SHELLEY C. STEPHENS,      )     CV NO 09-00484 DAE-KSC
                            )
         Plaintiff,      )
                            )
     vs.             )
                            )
OFFICERS JENNY LEE, JESSE  )
KERR, AND WILLIAM DERR   )
                            )
COUNTY OF HAWAII POLICE  )
DEPARTMENT          )
                            )
        Defendants.   )
_____  )

ORDER: (1) GRANTING COUNTY'S MOTION TO DISMISS;
(2) DENYING AS MOOT COUNTY'S MOTION TO DISMISS UNSERVED
DEFENDANTS; AND (3) DENYING AS MOOT COUNTY'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

On December 13, 2010, the Court was scheduled to hear Defendant

County of Hawaii Police Department's ("County") Motion for Summary

Judgment, Motion to Dismiss, and Motion to Dismiss Unserved Defendants.

(Docs. ## 60, 62, 63.)  Plaintiff Shelley C. Stephens ("Plaintiff") did not appear at

the hearing[1]; Michael J. Udovic, Esq., appeared at the hearing on behalf of the

---

[1]The Court acknowledges that Plaintiff called in shortly before the hearing to request to appear at the hearing via telephone, but given the last minute nature of the request, the request was denied, as appropriate arrangements had not been made.

County.  Because Plaintiff did not appear at the hearing, and because the matter has been sufficiently briefed, pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing.  After reviewing the motions and the supporting and opposing memoranda, the Court: (1) GRANTS County's Motion to Dismiss; (2) DENIES AS MOOT County's Motion to Dismiss Unserved Defendants; and (3) DENIES AS MOOT County's Motion for Summary Judgment.

<u>BACKGROUND</u>

This case arises from an incident which took place on July 9, 2006, on Highway 11 in Kea'au, Hawaii.  On July 9, 2006, officers of the Hawaii Police Department ("HPD") were called to the scene of a reported domestic disturbance on Highway 11 in Kea'au.  (Motion for Summary Judgment, "MSJ," Doc. # 60 at 2.)  Officer William Derr ("Officer Derr") arrived at the scene and found Plaintiff walking alongside the highway.  (<u>Id.</u> at 3.)  County claims that Plaintiff was upset and in tears, appeared to be intoxicated, and that she told Officer Derr that she had a verbal altercation with her boyfriend.  (<u>Id.</u>)  Officer Derr offered Plaintiff a ride, which Plaintiff declined.  (<u>Id.</u>)  Plaintiff claims she was stranded due to her transportation breaking down, and that her fiancé was at the scene, further down

the road.  (First Amended Complaint, "FAC," Doc. # 1-4 at 4.)[2]  County claims

Officer Derr told Plaintiff to stay by the side of the road and not walk on the

highway so she would not get hit by a car (MSJ at 3), while Plaintiff claims she

was not walking in the road, but closer to the railing (FAC at 4).  According to

County, Officer Derr left the scene, but shortly thereafter heard a radio

transmission by another officer who had arrived at the scene.  (Mot. at 3.)  County

recounts that the radio transmission mentioned a male party seen coming from the

bushes, and concerned, Officer Derr returned to the scene.  (Id.)  County claims

that Alva Kapahua ("Kapahua") who was present at the scene upon Officer Derr's

return, informed Officer Derr that he and his girlfriend, Plaintiff, had fought at a

bar where they had been drinking.  (Id.)  Also present at the scene upon Officer

---

[2]Plaintiff is advised that pursuant to Local Rule 10.3 "an amended pleading
shall reproduce the entire pleading as amended and may not incorporate any part of
a prior pleading by reference, except with leave of the court."  Additionally, as a
general rule, an amended complaint supercedes the original complaint.  Forsyth v.
Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565,
567 (9th Cir. 1987); Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an
amended complaint is filed, the original pleading no longer serves any function in
the case.  Although Plaintiff claims that the Ammendment [sic] to the Original
Complaint "should be allowed because original service of complaint was not
complete and Ammendment [sic] are allowed until service is rendered," the Court
construes the Ammendment [sic] to the Original Complaint as a First Amended
Complaint.  As such, the Court looks to Doc. # 1-4 as the First Amended
Complaint, and will not consider any prior complaint filed by Plaintiff.

Derr's arrival were Officer Jenny Lee ("Officer Lee") and Officer Jesse Kerr ("Officer Kerr").  (Id.)

County asserts that the officers decided to separate Plaintiff and Kapahua, and upon doing so, Plaintiff became hysterical and started to cry.  (MSJ at 4.)  County further states that Kapahua began to walk away and Plaintiff followed him, while repeatedly entering the traffic lane.  (Id.)  The officers allegedly offered Plaintiff another ride home which she again refused and continued walking into the traffic lane.  (Id.)  According to County, Officer Lee then approached Plaintiff to lead her off the highway, at which point Plaintiff "yanked her arm away, swinging her arm back at Officer Lee, striking Officer Lee and pulling Officer Lee to the pavement."  (Id.)  County states that Officer Lee informed Plaintiff she was under arrest, and that Plaintiff continued to struggle with Officer Lee and refused to be handcuffed.  (Id.) County contends she was eventually subdued and handcuffed, transported to Kea'au Police Station, less than one minute away, and after complaints of pain, Plaintiff was transported by paramedics to Hilo Medical Center.  (Id. at 4-5.)

Plaintiff alternatively alleges that upon Officer Lee and Officer Kerr's arrival at the scene, a series of events escalated and rendered a violent and dangerous situation for Plaintiff.  (FAC at 4.)  Plaintiff claims that Officer Lee and

Officer Kerr placed her in a choke hold before arresting her and that she was told she was being arrested for disobeying the officer by not accepting a ride. (FAC at 4.) Plaintiff further claims that she offered her arm to the officers "to get the incident over with," but that Officer Kerr instead wrenched her arm and twisted her shoulder in the socket, and grabbed her other arm and forced Plaintiff to the ground. (Id.) Plaintiff additionally states that Officer Kerr forced his knee to her back and ribs, resulting in her impact to the ground, and then repeatedly wrenched her left and right arm and shoulders. (Id.) According to Plaintiff, she was thrown onto the floor of the Police car, hitting her lower back and side of her tail bone. (Id.) Plaintiff also claims that after being transported to the police station, Officer Lee threatened to "drop her onto her head," in order to get her out of the car. (Id.) As a result of these actions, Plaintiff avers she suffered a series of physical and emotional injuries including but not limited to: impingement syndrome, stretching of the nerves across the chest and the arms, and mental anguish including post traumatic stress syndrome. (Id. at 6-7.)

On July 7, 2008, Plaintiff filed the instant action in the Circuit Court of the Third Circuit, State of Hawaii, against Officer Lee, Officer Kerr, Officer Derr, and the County of Hawaii Police Department (collectively, "Defendants"). (Complaint, Doc. # 1-3.) On September 16, 2009, Plaintiff filed the Ammendment

[sic] to Original Complaint (First Amended Complaint) ("FAC"), alleging violations of 42 U.S.C. §§ 1983, 1985, 1986 and 18 U.S.C. §§ 3, 241, 242.  (FAC, Doc. # 1-4.)  On October 13, 2009, County removed the action from state court to federal court.  (Doc. # 1.)  On September 9, 2010, County filed a Motion for Summary Judgment and a supporting Concise Statement of Facts (MSJ, Doc. # 60; County's Concise Statement of Facts, Doc. # 61).  On September 9, 2010, County also filed a Motion to Dismiss Unserved Defendants (Motion to Dismiss Unserved Defendants, "MTD 1," Doc. # 62) and a Motion to Dismiss (Motion to Dismiss, "MTD 2," Doc. # 63).  On October 26, 2010, Plaintiff filed a Request to Submit Memorandum in Opposition of Motion to Dismiss ("Opposition").  ("Opp'n," Doc. # 69.)  On the same day, Plaintiff also submitted a Motion to Deny County of Hawaii Police Department's Motion to Dismiss (Doc. # 70), and a Response to Request for Dismissal by County of Hawaii Police Department (Doc. # 71.)  On November 8, 2010, County filed a Reply to Plaintiff's Request to Submit Memorandum in Opposition of Motion to Dismiss (Doc. # 76) and a Reply to Plaintiff's Response to Request for Dismissal by County of Hawaii Police Department (Doc. # 77).

<u>STANDARD OF REVIEW</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted.  Review is limited to the contents of the complaint.  <u>See</u> <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754 (9th Cir. 1994).  A complaint may be dismissed as a matter of law for one of two reasons: "(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim."  <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984) (citation omitted).  Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  <u>See</u> <u>Livid Holdings Ltd. v. Salomon Smith Barney, Inc.</u>, 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555–56 (2007). In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  <u>See</u> <u>id.</u> at 556–57; <u>see also</u> <u>McGlinchy v. Shell Chem. Co.</u>, 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and

courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted). Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim "are not entitled to an assumption of truth." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief. See Twombly, 550 U.S. at 570. A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief. Id. at 586. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 558 (citation omitted). If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.  Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)).  "Conclusory allegations unsupported by factual data

cannot defeat summary judgment." Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.; see also Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted).  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

I.   <u>Violations Under 42 U.S.C. § 1983</u>

> Section 1983 of Title 42 of the U.S. Code states:
> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage . . . subjects, or causes to be
> subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 does not create any substantive rights; rather it is

the vehicle whereby plaintiffs can challenge actions by governmental officials."

<u>Cholla Ready Mix, Inc. v. Civish</u>, 382 F.3d 969, 978 (9th Cir. 2004) (quoting

<u>Henderson v. City of Simi Valley</u>, 305 F.3d 1052, 1056 (9th Cir. 2002))

(quotations omitted).  To state a claim under Section 1983, "'a plaintiff must show

(1) that the conduct complained of was committed by a person acting under color

of state law; and (2) that the conduct deprived the plaintiff of a federal

constitutional or statutory right.'"  <u>Jensen v. City of Oxnard</u>, 145 F.3d 1078, 1082

(9th Cir. 1998) (quoting <u>Wood v. Ostrander</u>, 879 F.2d 583, 587 (9th Cir. 1989)).

In the instant case, Plaintiff fails to allege sufficient facts to show: (1)

municipal liability, and (2) failure to train.  The Court will address each of these

issues in turn.

1.      Municipal Liability

A plaintiff may not assert a claim under Section 1983 merely by identifying conduct properly attributable to the municipality.  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997).  "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  Id.

"[M]unicipalities may be held liable as 'persons' under § 1983 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"  Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)).  "A plaintiff may also establish municipal liability by demonstrating that (1) the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity;' (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority 'delegated that

13

authority to, or ratified the decision of, a subordinate.'" Id. (quoting Ulrich v. City & County of S.F., 308 F.3d 968, 984–85 (9th Cir. 2002)).

A plaintiff may therefore establish municipal liability by proving that the alleged constitutional violation was committed pursuant to a formal policy or custom that constitutes the standard operating procedure; that an official with "final policy-making authority"[3] committed the constitutional tort; or "that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Gillette v. Delmore, 979 F.2d 1342, 1346–47 (9th Cir. 1992); see Monell, 436 U.S. at 690–91.  "[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives." Okla. City v. Tuttle, 471 U.S. 808, 823 (1985).  The word custom recognizes situations where the practices of officials are permanent and well settled.  See Adickes v. S. H. Kress & Co., 398 U.S. 144, 167–68 (1970). Allegations of random acts, or single instances of misconduct, are insufficient to establish a municipal custom.  See Navarro v. Block, 72 F.3d 712, 714–15 (9th Cir. 1996); Thompson v. City of L.A., 885 F.2d 1439, 1443–44 (9th Cir. 1989).

---

[3] "Whether a particular official has final policy-making authority is a question of state law."  Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992).

In the instant case, Plaintiff's FAC alleges that "the police officers named in this lawsuit are employees of the County and are bound to the oath of the State and the United States of America."  (FAC at 2.)  Plaintiff additionally contends that the "two officers did escalate situation into Excessive Force and violation of Constitutional rights, abuse while in the State or County custody."  (Id. at 5.)  Aside from these two statements in the FAC, Plaintiff utterly fails to attribute liability to the County and further fails to provide any facts describing the alleged policy or custom, how it was deficient, and how it caused injury to Plaintiff.[4]

Moreover, the County cannot be held liable for the actions of certain individuals, employees, or agencies under a theory of respondeat superior.  Even if the officers, at their own discretion, violated Plaintiff's constitutional rights, the County would not be liable for those actions.  "The cases make clear that the unconstitutional discretionary actions of municipal employees generally are not chargeable to the municipality under [S]ection 1983."  Gillette, 979 F.2d at 1347 (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988) (observing that "[i]f the mere exercise of discretion by an employee could give rise to a

_____

[4]Plaintiffs also fail to allege that an employee with final policymaking authority committed the constitutional tort or ratified the unconstitutional actions of a subordinate such that liability can attach to City Defendants.

15

constitutional violation, the result would be indistinguishable from respondeat superior liability")); see also Monell, 436 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.").

Plaintiff fails to state allegations regarding municipal liability, and any allegations attributing the officers' conduct to the County are insufficient to survive a motion to dismiss.  See Iqbal, 129 S. Ct. at 1949.  Accordingly, Plaintiff fails to state a claim for municipal liability on the basis of a municipal policy or custom.

2.     Failure to Train

While Plaintiff does not clearly allege failure to train or supervise, her allegation as to improper handcuffing techniques is construed by the Court as an attempt to allege failure to train.  (FAC at 2, 5.)

Under certain circumstances, failure to train may create municipal liability.  See City of Canton v. Harris, 489 U.S. 378, 388 (1989); Price, 513 F.3d at 973.  Deficient police training creates Section 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons" the police have contact with.  City of Canton, 489 U.S. at 388.  Deliberate indifference may be found where a training program is obviously deficient, and the inadequacy of the program is likely to result in the violation of citizens' constitutional rights.

Id. at 390; see also Bd. of County Comm'rs, 520 U.S. at 410 ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."). Additionally, "the identified deficiency in a city's training program must be closely related to the ultimate injury." Id. at 391. These high standards of fault and causation are necessary to protect judicial efficiency and to avoid creating "de facto respondeat superior liability on municipalities." Id. at 391–92.

Plaintiff "seeks justice . . . to insist that handcuffing of any person in Hawaii County must be executed in a professional and human procedure . . ." (FAC at 2.) The Court affords Plaintiff great latitude in construing this as a claim for failure to train, and even still, Plaintiff's FAC is completely devoid of any facts to support such a claim. (See id. 2, 5.) Plaintiff does not identify any training program, much less a deficient training program, that would likely result in the violation of Plaintiff's constitutional rights. Plaintiff also fails to make a contention that the officers' "improper handcuffing techniques" were based on deliberate indifference. Accordingly, Plaintiff fails to state a claim for failure to train under § 1983.

For the aforementioned reasons, the Court GRANTS County's Motion to Dismiss as to Plaintiff's § 1983 claim.

17

II.     Conspiracy to Interfere with Civil Rights Under 42 U.S.C. § 1985

Section 1985 proscribes conspiracies to interfere with certain civil rights.  Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988). While Plaintiff's FAC identifies causes of action under § 1985(1),(2), and (3), the Court construes Plaintiff's claim as proceeding only under § 1985(3), as Plaintiff's FAC makes no allegation of interference with holding any office, or obstruction of justice in the federal courts.  See 42 U.S.C. § 1985(1)–(2).  Under § 1985(3), a party has a right of action against "two or more persons in any State or Territory [who] conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).

To state a claim under subsection 1985(3), Plaintiff must first allege racial or class-based invidious discrimination.  See Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992); Bretz v. Kelman, 773 F.2d 1026, 1028–30 (9th Cir. 1985) (stating that an allegation of class-based discrimination is required to plead a section 1985(3) cause of action).  Here, Plaintiff alleges that "she was not treated the same as her fiancé who is 'local,'" but does not provide specific facts to support this allegation. (FAC at 6.)  See Iqbal, 129 S. Ct. at 1949.

18

Further, Plaintiff must state specific facts to support the existence of a claimed conspiracy. <u>Olsen v. Idaho State Bd. of Med.</u>, 363 F.3d 916, 929 (9th Cir. 2004); <u>see also</u> <u>Sanchez v. City of Santa Ana</u>, 936 F.2d 1027, 1039 (9th Cir. 1990) ("A mere allegation of conspiracy without factual specificity is insufficient to support a claim."); <u>Jaco v. Bloechle</u>, 739 F.2d 239, 245 (6th Cir. 1984) (upholding dismissal of a § 1985 claim because the plaintiff's complaint was devoid of the factual allegations necessary to support a conspiracy theory).  In the instant case, Plaintiff pleads no facts in support of a conspiracy allegation within § 1985(3).  In fact, outside of Plaintiff's list of causes of actions on the first page of the FAC, Plaintiff makes no mention of the word conspiracy or anything suggesting the existence of a claimed conspiracy.  There simply is no legal basis for Plaintiff's claim under § 1985(3), thus it fails as a matter of law.

Accordingly, the Court GRANTS County's Motion to Dismiss as to Plaintiff's claims under 42 U.S.C. § 1985.

III.    <u>Failure to Prevent a Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1986</u>

"Section 1986 provides a cause of action against parties who fail to prevent conspiracies to violate the civil rights of other people." <u>Delta Sav. Bank v. United States</u>, 265 F.3d 1017, 1024 (9th Cir. 2001).  Specifically, a person can be

liable under § 1986 if that person knows of the conspiracy to violate the civil rights of another under 42 U.S.C. § 1985, has power to prevent the rights violation, and neglects or refuses to do so.  <u>See</u> 42 U.S.C. § 1986.  Liability attaches to the extent of the damages that the person could have prevented with reasonable diligence.  <u>Id.</u>

The Ninth Circuit has held that "a cause of action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985." <u>Trerice</u>, 769 F.2d at 1403.  Because the Court has already found that Plaintiff cannot prevail on her § 1985 claim, Plaintiff's § 1986 claim will fail as well.

Accordingly, the Court GRANTS County's Motion to Dismiss as to Plaintiff's § 1986 claim.

IV.   <u>Plaintiff's Causes of Action Under Criminal Statutes 18 U.S.C. §§ 3, 241, and 242</u>

Plaintiff's complaint includes purported violations of criminal statutes under 18 U.S.C. §§ 3, 241, and 242, but a civil complaint cannot state a claim for violation of a criminal statute.  <u>See</u> <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980).  Plaintiff cannot bring her claims as to accessory after the fact, conspiracy against rights, and deprivation of rights under color of law, because these claims pursue criminal charges against the defendants, and cannot be pursued in a civil action.  <u>Id.</u>  Whether to prosecute and what criminal charges to file are

decisions to be made by the prosecutor, and the conduct of criminal prosecution is an executive function within the exclusive scope of the Attorney General.  <u>See</u> <u>United States v. Batchelder</u>, 442 U.S. 114, 124, (1979).

Thus, Plaintiff's claims under criminal statutes 18 U.S.C. §§ 3, 241, and 242 are DISMISSED WITH PREJUDICE.

VI.    <u>Leave to Amend, Motion to Dismiss Unserved Defendants, and Motion for Summary Judgment</u>

While Plaintiff does not explicitly request leave to amend, the Court recognizes that it may be possible for Plaintiff to state a claim if provided the opportunity to amend her Complaint.  Additionally, "[a] pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"  <u>Id.</u> (quoting <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448 (9th Cir. 1987), <u>superceded by statute</u>, <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126-30 (determining that a district court retains its discretion to dismiss a pro se prisoner's in forma pauperis complaint with or without leave to amend under the Prisoner's Litigation Reform Act)).  "[B]efore dismissing a pro se civil rights complaint for failure to state a claim, the district court must give the plaintiff a statement of the complaint's deficiencies."  <u>Id.</u>

21

Accordingly, the FAC is DISMISSED WITHOUT PREJUDICE as to Plaintiff's civil claims.  Plaintiff shall serve and file any amended complaint within 30 days from the date of the filing of this Order.[5]  Should Plaintiff choose to file a Second Amended Complaint in this Court, Defendants shall have 20 days to respond.  Additionally, County's Motion to Dismiss Unserved Defendants is DENIED AS MOOT because the Court dismisses Plaintiff's FAC without prejudice and with leave to amend.  Should Plaintiff choose to file an amended complaint against all named defendants, including those previously unserved, service must be proper within 30 days of this Order.  Failure to properly serve an amended complaint in the allotted time will result in dismissal of the complaint as to the unserved defendants without further leave from the Court.  Finally, because the Court allows Plaintiff leave to amend the FAC, County's Motion for Summary Judgment is DENIED AS MOOT.

---

[5]It is unclear to the Court whether Plaintiff is alleging any state law claims. To the extent that Plaintiff is alleging violations of state law, state claims do not confer jurisdiction on this Court.  The Court may exercise supplemental jurisdiction over the state claims only after Plaintiff has established federal jurisdiction by properly pleading her federal claim.  Because the Court has granted Defendant's Motion to Dismiss Plaintiff's FAC, the Court declines to reach any potential state law claims.

## CONCLUSION

For the reasons stated above, the Court: GRANTS County's Motion to Dismiss (Doc. # 63), DENIES AS MOOT County's Motion to Dismiss Unserved Defendants (Doc. # 62), and DENIES AS MOOT County's Motion for Summary Judgment (Doc. # 60.)  The Complaint is DISMISSED WITH PREJUDICE as to all criminal claims, and DISMISSED WITHOUT PREJUDICE as to all civil claims.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 17, 2010.



_____
David Alan Ezra
United States District Judge

Stephens v. Lee et al., Cv. No. 09-00484 DAE-KSC; ORDER: (1) GRANTING COUNTY'S MOTION TO DISMISS; (2) DENYING AS MOOT COUNTY'S MOTION TO DISMISS UNSERVED DEFENDANTS; AND (3) DENYING AS MOOT COUNTY'S MOTION FOR SUMMARY JUDGMENT

23