IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SHELLEY C. STEPHENS, | ) | CV. NO. 09-00484-DAE-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| COUNTY OF HAWAII POLICE | ) | |
| DEPARTMENT, DEPT. OF | ) | |
| HUMAN RESOURCES, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |


ORDER: (1) GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON
THE PLEADINGS, (2) DISMISSING PLAINTIFF'S COMPLAINT WITHOUT
PREJUDICE, AND (3) DENYING AS MOOT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

On April 4, 2012, the Court heard County of Hawaii Police

Department, Department of Human Resources' ("Defendant") Motion for

Judgment on the Pleadings and Motion for Summary Judgment. (Doc. # 154.)

Plaintiff Shelley C. Stephens ("Plaintiff"), proceeding pro se, appeared at the

hearing on behalf of herself; Deputies Corporation Counsel Brooks L. Bancroft

and Kimberly Angay appeared at the hearing on behalf of Defendant. After

reviewing the Motion and the supporting memoranda, the Court **GRANTS**

Defendant's Motion for Judgment on the Pleadings, **DISMISSES** Plaintiff's

Complaint without prejudice, and **DENIES AS MOOT** Defendant's Motion for

Summary Judgment.

BACKGROUND

I.    Factual Background

        This case stems from an incident that took place on July 9, 2006,

when Plaintiff Shelley Stephens ("Plaintiff") was walking home on the side of a

highway with her fiancé.  (See "TAC," Doc. # 147 § V.)  An officer of the Hawaii

Police Department ("HPD") allegedly arrived, saw that Plaintiff was visibly upset,

and offered Plaintiff a ride.  (Id.)  Two other officers subsequently arrived at the

scene.  (Id.)  Plaintiff alleges that after her fiancé told the officers that she could go

home with him, one of the officers stepped in and grabbed Plaintiff by the right

shoulder.  (Id.)  Plaintiff allegedly responded by raising her right hand in the air to

brush the officer off.  (Id.)  According to Plaintiff, she was "again grabbed and

choked" and told that she was being arrested for disobeying an officer.  (Id.)  She

claims that she offered her left arm to acquiesce to arrest, but was subjected to

"choking, pushing of her left arm almost out of its socket, wrenching of her right

arm" while being placed in handcuffs.  (Id.)  As a result of this incident, Plaintiff

allegedly suffered numerous abrasions and pain in her neck, lower back, and

tailbone.  (Id.)  She claims that she now has Impingement Syndrome that causes

severe pain in her shoulders, and that she had to attend months of vocational rehabilitation.  (Id.)

II.    Procedural Background

On July 7, 2008, Plaintiff filed the instant action in the Circuit Court of the Third Circuit, State of Hawaii, against the three individual police officers and the HPD.  (Doc. # 1-3.)  On September 16, 2009, Plaintiff filed an amendment to the Original Complaint ("FAC"), alleging violations of 42 U.S.C. §§ 1983, 1985, 1986 and 18 U.S.C. §§ 3, 241, 242.  (Doc. # 1-4.)  On October 13, 2009, the HPD ("Defendant") removed the action to federal court.  (Doc. # 1.)

On September 9, 2010, Defendant filed a Motion for Summary Judgment (Doc. # 60) and a Motion to Dismiss Unserved Defendant Officers. (Doc. # 62).  On September 14, 2010, Defendant filed a separate Motion to Dismiss the entire action for failure to state a claim.  (Doc. # 63.)  Plaintiff made several submissions in opposition to these motions.  (See Docs. ## 69, 70, 71.)  On November 8, 2010, Defendant filed replies in further support of its motions. (Docs. ## 76, 77.)

On September 20, 2010, the Magistrate Judge attempted to reach Plaintiff for a Settlement Conference but received a message that the telephone number provided by Plaintiff had been disconnected or was no longer in service.

(Doc. # 66.)   Magistrate Judge Kevin Chang subsequently issued an Order to Show Cause why the case should not be dismissed for failure to appear.  (Id.)  At the show cause hearing, Plaintiff explained her reasons for not appearing at the Conference and provided the Court with a new telephone number.  (Doc. # 68.)  The Court reset the Settlement Conference and took no further action on the Order to Show Cause.  (Id.)

On December 13, 2010, after Plaintiff failed to appear at the hearing on Defendant's pending motions, the Court issued an Order dismissing Plaintiff's FAC without prejudice for failure to adequately allege the elements needed to state a claim for municipal liability, failure to train, or conspiracy to interfere with civil rights.  (Doc. # 83.)  The Court noted that Plaintiff "utterly fail[ed] to attribute liability to the County and further fail[ed] to provide any facts describing the alleged policy or custom, how it was deficient, and how it caused injury to Plaintiff."  (Id. at 15.)  The Court granted plaintiff leave to amend and advised Plaintiff that if she chose to file an amended complaint against the same defendants, she should properly serve those previously unserved.  (Id. at 22.)  In light of the Court's dismissal of the FAC, the Court denied as moot Defendant's Motion to Dismiss Unserved Defendants and Motion for Summary Judgment.  (Id.)

On January 7, 2011, Plaintiff filed a Second Amended Complaint.

("SAC," Doc. # 91.)  On February 17, 2011, Defendant filed a second Motion to

Dismiss Unserved Defendants.  (Doc. # 94.)  On April 20, 2011, this Court issued

an Order Adopting Magistrate Judge Chang's Findings and Recommendation to

deny Plaintiff's request for more time for service and grant Defendant's motion to

dismiss the three individual police officers.  (Doc. # 104.)  As a result, the HPD is

the sole remaining defendant in this action.  (See id.)

On July 7, 2011, Defendant filed a Motion to Dismiss (Doc. # 115)

and a Motion for Summary Judgment (Doc. # 113) with respect to Plaintiff's SAC.

On August 8, 2011, the Plaintiff submitted a one-page hand-drawing

depicting the nature of her alleged medical injuries.  (Doc. # 121.)  On August 15,

2011, Defendant filed a Reply to Plaintiff's submission.  (Doc. # 122.)  On

September 19, 2011, Plaintiff submitted a Declaration, ostensibly in opposition to

Defendant's Motion for Summary Judgment.  (Doc. # 124.)  On September 23,

2011, Defendant filed a Motion to Strike Plaintiff's Declaration.  (Doc. # 125.)  On

September 23, 2011, Plaintiff filed an Opposition to Defendant's Motion to

Dismiss and Motion for Summary Judgment.  (Doc. # 127.)

A Final Pretrial conference was scheduled for October 4, 2011.  (Doc.

# 131.)  Plaintiff once again failed to appear at the Final Pretrial Conference and

also failed to submit a Final Pretrial Conference Statement, as required by Rule 16.6 of the Local Rules.  (Id.)  On October 5, 2011, Magistrate Judge Chang issued a second Order to Show Cause and an Order Imposing Sanctions on Plaintiff for failure to appear at a Final Pretrial Conference.  (Doc. # 133.)  The Court ordered Plaintiff to pay $186.40 for defense counsel's travel expenses.  (Doc. # 134.)  At the show cause hearing held on October 14, 2011, Plaintiff once again explained her reasons for not appearing at the Conference and the Court took no further action.  (Doc. # 137.)

On October 17, 2011, the Court issued an Order dismissing Plaintiff's SAC for failure to allege a conspiracy claim and failure to adequately allege the County of Hawaii's "deliberate indifference," as required to state a claim based on an alleged failure to train.  (Doc. # 139.)  The Court found that any alleged misconduct of the arresting officers was insufficient to show deliberate indifference, and instructed Plaintiff to "allege facts which describe the training received by officers, the customers adopted by the HPD, the promulgation of those customs, how the training was inadequate and how the training resulted in violations of constitutional rights."  (Id. at 16.)  The Court granted Plaintiff leave to amend and warned that "[f]ailure to [file an amended complaint] and to cure the

pleading deficiencies will result in dismissal of this action <u>with prejudice</u>." (<u>Id.</u> at 21 (emphasis in original).)

On November 17, 2011, Plaintiff filed the Third Amended Complaint ("TAC"). ("TAC," Doc. # 147.) Attached to the complaint are 17 exhibits, which include various handwritten notes. Defendant filed an Answer to Plaintiff's TAC on December 5, 2011. (Doc. # 150.)

On February 16, 2012, Defendant filed the instant Motion for Judgment on the Pleadings and Motion for Summary Judgment. (Doc. # 154.) Defendant also filed a Concise Statement of Facts in support of these Motions. ("CSOF," Doc. # 155.) On April 4, 2012, immediately before the hearing on these matters, Plaintiff filed an Opposition to the Summary Judgment Motion. (Doc. # 159.)

<u>STANDARD OF REVIEW</u>

I.    <u>Motion for Judgment on the Pleadings</u>

Rule 12(c) states, "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is properly granted when the court, accepting all the allegations in the pleadings as true and construing them in the light most favorable to the nonmoving party, concludes that the moving party is

entitled to judgment as a matter of law.  Fleming v. Pickard, 581 F.3d 922, 925

(9th Cir. 2009).  No issue of material fact may be in dispute.  Id.

When Rule 12(c) is used to raise the defense of failure to state a claim

upon which relief can be granted, the standard governing the Rule 12(c) motion for

judgment on the pleadings is the same as that governing a Rule 12(b)(6) motion.

See McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988); Luzon v.

Atlas Ins. Agency, Inc., 284 F. Supp. 2d 1261, 1262 (D. Haw. 2003).  As a result, a

motion for judgment on the pleadings for failure to state a claim may be granted

"'only if it is clear that no relief could be granted under any set of facts that could

be proven consistent with the allegations.'"  McGlinchy, 845 F.2d at 810 (quoting

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Dworkin v. Hustler

Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference

between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing.

Because the motions are functionally identical, the same standard of review

applicable to a Rule 12(b) motion applies to its Rule 12(c) analog.").

Thus, "[a] judgment on the pleadings is properly granted when, taking

all allegations in the pleading as true, the moving party is entitled to judgment as a

matter of law."  Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d

526, 528 (9th Cir. 1997) (citing McGann v. Ernst & Young, 102 F.3d 390, 392 (9th

Cir. 1996)).  "Not only must the court accept all material allegations in the complaint as true, but the complaint must be construed, and all doubts resolved, in the light most favorable to the plaintiff."  <u>McGlinchy</u>, 845 F.2d at 810.

To withstand a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1940 (2009).  Although the court must accept all well-pleaded factual allegations as true, "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u>  Nor must the court "accept as true a legal conclusion couched as a factual allegation."  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555).

II.  <u>Motion for Summary Judgment</u>

Summary judgment is granted under Federal Rule of Civil Procedure 56 when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see also</u> <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005); <u>Addisu v.</u>

Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323. A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence

without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence' " must be produced.  T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.  Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)).  "Conclusory allegations unsupported by factual data cannot defeat summary judgment."  Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id.; see also Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted). However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

As a preliminary matter, when a plaintiff appears pro se, the court has an obligation to construe the plaintiff's complaint liberally. See Bernhardt v. Los Angeles Cnty., 339 F.3d 920, 925 (9th Cir. 2003); Jackson v. Carey, 353 F.3d 750, 757 (9th Cir. 2003) ("Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." (citation omitted)). "A pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (citation and quotation omitted). However,

"[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

In Plaintiff's "Statement of the Case" in the TAC, Plaintiff alleges as follows:

> Plaintiff did receive a copy of the HPD 606 which does state that describes [sic] in detail, the use of various types of "Pain Compliance" methods. These methods are executed with obvious deficiencies that appear in numerous cases that the Corporation Counsel is fully aware of; to lead to "Deliberate Indifference" of the HPD "Ethics" Statement; thereby violating numerous Constitutional Rights of the Plaintiff; including the 4th Amendment that seeks to protect individuals' right to be free from excessive force during an arrest.

(TAC at 5, ¶ F.) As best the Court can discern, Plaintiff appears to be alleging a municipal liability claim under 42 U.S.C. § 1983 based on (1) municipal policy or custom, and (2) failure to properly train police officers.[1]

Defendant moves for judgment on the pleadings and summary judgment on the grounds that it has no unconstitutional policy or inadequate training program, and therefore cannot be held liable pursuant to § 1983.

---

[1] The Court notes that Plaintiff also appears to assert an equal protection violation based on the allegation that "'Females' or Women are singled out for differential treatment during arrest and are subjected to a special type of Pain Compliance not used on males (Men) . . . ." (TAC at 5, ¶ G.) Plaintiff provides no facts to support this allegation, other than that she is a woman and that the police "did not treat the Plaintiff the same as her Fiancé- Kapahua (a local male)." (Id. at 9.) Moreover, Plaintiff has not alleged any causal link between the purported discriminatory treatment and a municipal policy or custom.

For the reasons set forth below, the Court **GRANTS** Defendant's

Motion for Judgment on the Pleadings and **DENIES AS MOOT** Defendant's

Motion for Summary Judgment.

I.	Municipal Liability under 42 U.S.C. § 1983

This Court has analyzed claims against municipalities, such as the

County of Hawaii ("County"), and their respective police departments, such as

HPD, under the rubric of municipal liability, determining that such claims

constitute claims against the County because the departments are not separate legal

entities.  See Pourny v. Maui Police Dep't, Cnty. of Maui, 127 F. Supp. 2d 1129,

1143 (D. Haw. 2000) (treating the Maui Police Department and the County of

Maui as one party); Tokuhama v. City & Cnty. of Honolulu, et al.,

751 F. Supp. 1385, 1387–88, 1391–94 (D. Haw. 1989) (reviewing the City and

County of Honolulu's liability under § 1983 for the alleged unconstitutionality of

HPD's policies and customs); see also Headwaters Forest Defense v. Cnty. of

Humboldt, et al., 276 F.3d 1125, 1127 (9th Cir. 2002) (treating police departments

as part of their respective county or city).  Moreover, the Hawaii Supreme Court

has held that different departments of the City and County of Honolulu are not

separate legal entities apart from the municipality.  See City & Cnty. of Honolulu

v. Toyama, 61 Haw. 156, 598 P.2d 168, 172 (1979). Other jurisdictions have

reached similar conclusions, treating a city's police department as part of the municipality.  See, e.g., Shelby v. City of Atlanta, et al., 578 F. Supp. 1368, 1370 (N.D. Ga. 1984); Baker v. Willett, et al., 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999). Therefore, the Court will construe Plaintiff's claims as against the County.

Section 1983 of Title 42 of the U.S. Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 978 (9th Cir. 2004) (quoting Henderson v. City of Simi Valley, 305 F.3d 1052, 1056 (9th Cir. 2002)) (quotations omitted).  To state a claim under § 1983, "a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right."  Jensen v. City of Oxnard, 145 F.3d 1078, 1082 (9th Cir. 1998) (quoting Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989)).

A plaintiff may not assert a claim under § 1983 merely by identifying conduct properly attributable to the municipality.  Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997).  The plaintiff must also allege that, through the municipality's deliberate conduct, "the municipality was the moving force behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  Id.

A.    Municipal Policy or Custom

In Monell v. Department of Social Services, the Supreme Court established that municipalities may be held liable as "persons" under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)).  "A plaintiff may also establish municipal liability by demonstrating that (1) the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity;' (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority 'delegated that

authority to, or ratified the decision of, a subordinate.'" Price, 513 F.3d at 966

(quoting Ulrich v. City & Cnty. of San Francisco, 308 F.3d 968, 984–85 (9th

Cir. 2002)).

A municipality is liable under Monell only if the policy was the

"moving force" behind the constitutional violation. See Villegas v. Gilroy Garlic

Festival Assoc., 541 F.3d 950, 957 (9th Cir. 2008) (citing Galen v. Cnty. of Los

Angeles, 477 F.3d 652, 667 (9th Cir. 2007)). In other words, there must be "a

direct causal link between a municipal policy or custom and the alleged

constitutional deprivation." Villegas, 541 F.3d at 957 (quoting City of Canton v.

Harris, 489 U.S. 378, 385 (1989)).

Here, Plaintiff alleges that "[t]he County of Hawai'i has adopted a

formal Policy, Procedure, and Protocol that involves HPD 606 'Pain Compliance'

that is unregulated, vague, and lacks clear definitions of application that rendered

the Plaintiff in severe pain with complete disregard for the Plaintiff and other

Citizens [sic] Health and Safety." (TAC at 9, ¶ 4.) Plaintiff goes on to allege that

"[t]he HPD Policy for 'Pain Compliance' does allow the Police Officers to do acts

contrary to the Constitution of the United States of America; including to be free of

pain during arrest." (Id. at 9, ¶ 5.) However, the vague and conclusory allegations

that the County's policy "rendered the Plaintiff in severe pain" and allows the

17

officers to "do acts contrary to the Constitution" fail are not sufficient to establish municipal liability under Monell.  Indeed, the pain compliance policy that she complains of is not, in and of itself, an unconstitutional policy or custom.

Moreover, Plaintiff has not adequately alleged a causal link between the County's purported policy guidelines and any alleged constitutional violation. While Plaintiff alleges that "everything [the police officers] did appears to fall under the HPD 606 'Pain Compliance,'" (Id. at 11), this conclusory statement is insufficient to establish that the policy was the "moving force" behind the alleged constitutional violation.  See Villegas, 541 F.3d at 957.  Merely identifying a provision of the HPD policy guidelines does not show that the County's policies are causally linked to Plaintiff's alleged constitutional injury.  Plaintiff's bald assertion that "[t]he HPD Policy for 'Pain Compliance' does allow the Police Officers to do acts contrary to the Constitution of the United States of America" does not allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.

Even if the individual police officers, at their own discretion, violated Plaintiff's constitutional rights, the County would not be liable for these actions. "The cases make clear that the unconstitutional discretionary actions of municipal employees generally are not chargeable to the municipality under [S]ection 1983."

18

Gillette v. Delmore, 979 F.2d 1342, 1347 (9th Cir. 1992); see also Monell, 436 U.S. at 691.  Therefore, Plaintiff's municipal policy claim fails because Plaintiff does not adequately allege a causal link between the County's policies or customs and the alleged constitutional violation.

      B.    <u>Failure to Train</u>

      Plaintiff additionally asserts that "the HPD Training Manuals and 'Pain Compliance' HPD 606 Manual . . . offers absolute proof of their custom, procedure and protocol of particular training that is unique to Hawai'i and thereby does lead to deliberate Indifference and Violations of the Civil Rights of the Citizens[.]"  (TAC at 6, ¶ J.)  Plaintiff asks the Court to require that the HPD conduct a review "to promote a new custom and policy" such that "[t]he 'Aloha Training' is mandatory (not optional) and that the Officers of Hawai'i County are retrained[.]"  (<u>Id.</u> at 13, ¶ 5.)

      Inadequate police training may serve as the basis for § 1983 liability "only where the failure to train amounts to <u>deliberate indifference</u> to the rights of persons with whom the police come into contact."  <u>Canton</u>, 489 U.S. at 388 (emphasis added).  A court may find deliberate indifference where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can

reasonably be said to have been deliberately indifferent to the need." Id. at 390.

This high standard is necessary to avoid creating "de facto superior liability of

municipalities." Id. at 391–92; see also Bd. of Cnty. Comm'rs, 520 U.S. at 410

("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a

municipal actor disregarded a known or obvious consequence of his action.").

Additionally, "the identified deficiency in a city's training program must be closely

related to the ultimate injury." Canton, 489 U.S. at 391.

   The Court has twice instructed Plaintiff to allege facts related to the

training police officers receive and how this training is inadequate.  For example,

when dismissing Plaintiff's first complaint, the Court noted that Plaintiff "fail[ed]

to provide any facts describing the alleged policy or custom, how it was deficient,

and how it caused injury to Plaintiff."  (Doc. # 83 at 15.)  When dismissing

Plaintiff's second complaint, the Court instructed Plaintiff to "allege facts which

describe the training received by officers, the customs adopted by the HPD, the

promulgation of those customs, how the training was inadequate and how the

training resulted in violations of constitutional rights."  (Doc. # 139 at 16.)

   Despite the Court's instructions, Plaintiff's TAC does not allege any

facts related to the County's training of police officers and how this training is

inadequate.  Instead, Plaintiff makes generalized allegations relating to police

officers' conduct, such as alleging that "[Pain Compliance] methods are executed with obvious deficiencies that appear in numerous cases[.]" (TAC at 5, ¶ F.) This allegation is entirely conclusory and fails to point out a deficiency in the County's training of police officers. Indeed, Plaintiff does not even identify a training program, much less describe what the deficiencies in any such program are and how those deficiencies purportedly led to the violation of Plaintiff's constitutional rights. Plaintiff also continues to fail to allege facts rising to the level of "deliberate indifference" by the County. For all these reasons, the Court concludes that the TAC does not state a claim for failure to train under § 1983.

In sum, Plaintiff has not stated a cognizable claim against the Defendant for municipal liability within the meaning of § 1983. The Court therefore **DISMISSE**S all counts in the TAC.

II.      Leave to Amend

Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend] when justice so requires." Further, "requests for leave should be granted with extreme liberality." Moss v. U.S. Secret Service, 572 F.3d 962, 792 (9th Cir. 2009). "Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by an amendment." Id. "However, 'liberality in granting leave to amend is subject to several limitations.'" Cafasso, U.S. ex rel. v.

Gen. Dynamics C4 Sys., 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting Ascon

Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989)). "Those

limitations include undue prejudice to the opposing party, bad faith by the movant,

futility, and undue delay." Id. (citing Ascon Props, 866 F.2d at 1160). "Further,

'[t]he district court's discretion to deny leave to amend is particularly broad where

plaintiff has previously amended the complaint.'" Id. (quoting Ascon Props, 866

F.2d at 1160.

      Although this Court has already twice granted Plaintiff leave to

amend, given the fact that she is proceeding pro se, the Court will grant Plaintiff

one final opportunity to amend her complaint. The Complaint is therefore

**DISMISSED WITHOUT PREJUDICE** with leave to amend no later than sixty

(60) days from the filing of this Order. Plaintiff is instructed to allege with more

specificity the basis of her municipal liability claim in accordance with the detailed

instructions provided to Plaintiff at the hearing and in this Order. Failure to do so

and to cure the pleading deficiencies will result in dismissal of this action with

prejudice.

## CONCLUSION

      For the reasons stated above, the Court **GRANTS** Defendant's

Motion for Judgment on the Pleadings, **DISMISSES** Plaintiff's Third Amended

Complaint without prejudice, and **DENIES AS MOOT** Defendant's Motion for

Summary Judgment.

IT IS SO ORDERED.

Dated: Honolulu, Hawaii, April 5, 2012.



_____
David Alan Ezra
United States District Judge

<u>Stephens v. County of Hawaii Police Dep't</u>, Cv. No. 09-00484 DAE-KSC;
ORDER: (1) GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON
THE PLEADINGS, (2) DISMISSING PLAINTIFF'S COMPLAINT WITHOUT
PREJUDICE, AND (3) DENYING AS MOOT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT