IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SHELLEY C. STEPHENS, | ) | CIVIL NO. 09-00484 JMS-KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT |
| | ) | COUNTY OF HAWAII POLICE |
| vs. | ) | DEPARTMENT'S MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| COUNTY OF HAWAII POLICE | ) | |
| DEPARTMENT, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT COUNTY OF HAWAII POLICE
DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

This action, brought *pro se* by Plaintiff Shelley C. Stephens

("Plaintiff" or "Stephens") under 42 U.S.C. § 1983, alleges violations of Plaintiff's

civil rights stemming from a July 9, 2006 incident with officers of the County of

Hawaii Police Department. The Honorable David A. Ezra, who has relocated to

the Western District of Texas, made several dispositive rulings in this action over

the course of the past three years prior to the case being re-assigned to this court on

August 3, 2012. Defendant County of Hawaii Police Department ("Defendant" or

"the County") now moves for summary judgment on the only claim remaining in

Plaintiff's Fourth Amended Complaint. Doc. No. 188. For the reasons set forth,

Defendant's Motion is GRANTED.

## II. <u>BACKGROUND</u>

### A.    Factual Background and Prior Rulings by Judge Ezra

On July 30, 2012, Judge Ezra dismissed or granted summary judgment in favor of Defendant on all remaining counts in this action, except for Plaintiff's claim that Defendant violated Plaintiff's constitutional right to equal protection.[1] *See* Doc. No. 190, Order: (1) Granting in Part and Denying in Part Defendant's Motion to Dismiss; (2) Denying Plaintiff Leave to Amend; and (3) Granting in Part and Denying in Part Without Prejudice Defendant's Motion for Summary Judgment (the "July 30, 2012 Order").  Specifically, Judge Ezra determined that the Fourth Amended Complaint failed to properly allege, or the record was insufficient to create a genuine issue of material fact as to, Plaintiff's claims of excessive force and failure to train.  *Id.* at 19-20, 28.  As to Plaintiff's remaining claim alleging an equal protection violation based on Plaintiff's gender, Judge Ezra denied Defendant's Motion for Summary Judgment without prejudice because Defendant had not met its initial burden to demonstrate the absence of any

---

[1] Previously, on April 20, 2011, Judge Ezra dismissed individual Defendants Jenny Lee, Jesse Kerr, and William Derr from a Second Amended Complaint.  *See* Doc. No. 104, Order Adopting Magistrate Judge's Findings and Recommendation.  Thereafter, the Third and Fourth Amended Complaints have proceeded only against the Hawaii County Police Department.  *See* Doc. Nos. 147 (Third Amended Complaint) & 168 (Fourth Amended Complaint).

triable issue of material fact.  *Id.* at 28.  The matter was then re-assigned to this court, given Judge Ezra's designation for service outside the District of Hawaii. Doc. No. 183.

Defendant has renewed its Motion for Summary Judgment on the equal protection claim, as allowed by the July 30, 2012 Order.  Thus, given the scope of the July 30, 2012 Order and the prior proceedings in this action, the issue now before this court is extremely limited -- restricted only to Plaintiff's equal protection claim.  The court will not revisit any other issues such as Plaintiff's claims against Defendant for excessive force and failure to train, or individual claims against previously-dismissed individual Defendants.  The court has reviewed the lengthy record in this action, and considers Judge Ezra's previous Orders binding as "law of the case."  *See, e.g.*, *United States v. Jingles*, 682 F.3d 811, 816-17 (9th Cir. 2012) ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case.") (quoting *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988)); *see also United States v. Park Place Assoc.*, 563 F.3d 907, 925 (9th Cir. 2009) (stating that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case") (quoting *Arizona v. California*, 460 U.S. 605, 618

3

(1983)).

Moreover, the court will not allow Plaintiff to assert any additional claims -- Plaintiff has been given ample opportunities to state claims. Judge Ezra gave Plaintiff three chances to amend, and the court now faces a remaining count of the Fourth Amended Complaint. Under the law of the case doctrine, a party may neither "revisit theories that it raises but abandons," nor "offer up successively different legal or factual theories that could have been presented in a prior request for review." *Sec. Investor Prot. Corp. v. Vigman*, 74 F.3d 932, 937 (9th Cir. 1996) (quotations and citations omitted).

Because the parties are familiar with the facts of this action as comprehensively set forth in the July 30, 2012 Order (and prior Orders), the court need not repeat the details here. Thus, the court begins where Judge Ezra left off in the July 30, 2012 Order. The only issue remaining is whether the County of Hawaii Police Department violated Plaintiff's constitutional right to equal protection by having a policy of treating females differently than males when restraining non-compliant arrestees.

Specifically, Plaintiff alleges that an aspect of Defendant's "pain compliance" policy is discriminatory against females. Doc. No. 168, Fourth Am. Compl. at 3, ¶ 11. Plaintiff takes issue with an arrest and control tactic used on

women (and juveniles) but not on men that she refers to as "jabbing women in the neck, for mental stun and motor skill cessation." *Id.* In its Motion, Defendant refers to this technique as a "Pressure Point Control Tactic" called the "Brachial Plexus Clavicle Notch" technique. Doc. No. 189-14, Def.'s Ex. M, Correia Decl. ¶¶ 9-10; Doc. No. 189-13, Def.'s Ex. L at 6-12. In her Opposition, Plaintiff does not address the policy by this name, but the description of the procedure is consistent with the Brachial Plexus Clavicle Notch technique ("Clavicle Notch Technique") as described in the Defendant's Arrest Control Manual, Doc. No. 189-13, Def.'s Ex. L, and Plaintiff does not dispute that this is the policy she is challenging as an equal protection violation. That is, reading her Fourth Amended Complaint liberally, *see King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), Plaintiff thus appears to contend that it violates the equal protection clause to use this Clavicle Notch Technique on females, but not on males.

## B.   Procedural Background

Defendant filed its Motion for Summary Judgment on October 13, 2012. Doc. No. 188. Plaintiff filed her Opposition on November 26, 2012, Doc. No. 198, and Defendant filed its Reply on November 30, 2012. Doc. No. 199. Plaintiff filed an additional brief on Defendant's standards and "Issues of Police Brutality" on December 14, 2012. Doc. No. 202. The court held a hearing on

January 9, 2013.  After the hearing, Plaintiff filed a supplemental submission.

Doc. No. 207.

## III.  DISCUSSION

Defendant does not dispute that it has a policy of using, in appropriate

circumstances, the Clavicle Notch Technique against females and juveniles.

According to the uncontested declaration of Chris Correia ("Correia") (a police

officer who trains recruits in arrest control techniques for the Defendant), police

officers for Defendant use varying levels of force to arrest persons who are

resistive or combative.  Doc. No. 189-14, Def.'s Ex. M., Correia Decl. ¶ 8.  Correia

explains this policy as follows:

> 9.  Pressure Point Control Tactics are a type of
> Arrest Control Techniques and are used on resistive or
> combative subjects by using the stimulus of pain in order
> to bring the subject into compliance and control resistive
> behavior.
> 10.  The Brachial Plexus Clavicle Notch is a nerve
> directly behind the clavicle halfway between the sternum
> and the shoulder joint.  The stimulation of this pressure
> point involves touch pressure by the four fingers of the
> hand in a downward 45 degree angle toward the center of
> the body on the nerve.  This technique is particularly
> effective with women and children because they do not
> have the bone density of men.  However, this technique is
> generally less effective on men because of the bony
> structure in a man's neck and chest.  This is the sole
> reason it is not applied to adult males, because it may be
> ineffective.  This technique is a Pressure Point Control
> Tactic.

*Id.* at 2-4.  The relevant pages of Defendant's Arrest Control Manual are consistent with Correia's explanation of the Clavicle Notch Technique.  *See* Doc. No. 189-13, Def.'s Ex. L.

Initially, Defendant proffers evidence that (despite Plaintiff's challenge) no "neck jabbing" was performed on Plaintiff during the July 9, 2006 incident.  *See* Doc. No. 189-18, Defs.' Ex. Q, Lee Decl. ¶ 17 ("At no time during the incident did any officer attempt to perform any type of neck restraint on Stephens.  At no time did I, or any other officer[,] jab[] her neck or stimulate any pressure point [on] her neck, including the brachial plexus clavicle notch.  At no time did I, or any other officer, place her in a 'choke hold.'").  If the Clavicle Notch Technique was not performed on Plaintiff, Plaintiff cannot establish causation for purposes of a § 1983 claim.  *See, e.g.*, *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (explaining that "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality" but that a plaintiff must also "demonstrate a direct causal link between the municipal action and the deprivation of federal rights").  Plaintiff would also lack standing to challenge Defendant's Clavicle Notch Technique policy.  *See, e.g.*, *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1185 (9th Cir. 2012) ("[O]nly those who are 'personally denied' equal treatment have a cognizable injury under Article

III.").

Plaintiff, however, claims that "officers did grab the Plaintiff across the chest and neck resulting in an incomplete choke hold" and was grabbed "about the body again about the neck and shoulders resulting in Plaintiff being choked and bruised."  Doc. No. 168, Fourth Am. Compl. at 9.  Plaintiff testified as to being put "in a choke hold" in her deposition.  Doc. No. 189-17, Defs.' Ex. P, Stephens Dep. at 50.  Construing these statements in favor of Plaintiff, the court concludes that there is a question of fact as to whether and how Plaintiff was "choked" so as to allow Plaintiff to bring her equal protection challenge.

Nevertheless, Plaintiff's equal protection challenge fails as a matter of law.  Government "classifications that distinguish between males and females are 'subject to scrutiny under the Equal Protection Clause.'"  *Craig v. Boren*, 429 U.S. 190, 197 (1976 (quoting *Reed v. Reed*, 404 U.S. 71, 75 (1971)).  "To withstand constitutional challenge, previous cases establish that classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives."  *Id.*; *see also, e.g.*, *Califano v. Westcott*, 443 U.S. 76, 85 (1979) (analyzing whether gender distinction imposed by statute survives constitutional scrutiny as "substantially related to achievement of an important governmental objective").

8

Defendant has demonstrated that the Clavicle Notch Technique is applied to females and juveniles based upon different physical characteristics (differences between bony structures in the neck between females and juveniles, on one hand, and males, on the other). Under the written policy, the technique "[s]hould be applied to Juveniles and females." Doc. No. 189-13 at 11, Def.'s Ex. L at 6-12. It is "generally less effective on men because of the bony structure in a man's neck and chest." Doc. No. 189-14, Def.'s Ex. M, Correia Decl. ¶ 10. "This is the sole reason it is not applied to adult males, because it may be ineffective." *Id.* Assuming Defendant's policy constitutes a classification based on gender, it is based on legitimate physical differences between the genders. *See, e.g.*, *Michael M. v. Superior Court of Sonoma Cnty.*, 450 U.S. 464, 469 (1981) ("[B]ecause the Equal Protection Clause does not 'demand that a statute necessarily apply equally to all persons' or require 'things which are different in fact . . . to be treated in law as though they were the same,' this Court has consistently upheld statutes where the gender classification is not invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances.") (citations omitted).

Defendant's policy thus furthers an important and legitimate government interest (utilizing safe, effective, techniques to restrain non-compliant

combative individuals when being arrested).  *See, e.g.*, *Schenck v. Pro-Choice Network*, 519 U.S. 357, 376 (1997) (referring to the "significant governmental interest in public safety"); *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994) ("[T]he city clearly had a legitimate interest in quickly dispersing and removing lawbreakers with the least risk of injury to police and others.").

And the use of this pressure-point control technique primarily on non-compliant female and juvenile arrestees (but not generally on males) is substantially related to that important interest.  *See, e.g.*, *Forrester*, 25 F.3d at 807 (upholding finding that "officers acted reasonably in using pain compliance techniques to arrest the demonstrators" who were "passively" resisting arrest); *Eberle v. City of Anaheim*, 901 F.2d 814, 820 (9th Cir. 1990) (finding it reasonable as a matter of law to use a painful "finger control hold" to remove belligerent spectator from an arena).  Indeed, it would make no sense to *require* the same use of the technique on males as on females (that is, to apply the same force equally to all arrestees without regard to the need for use of such force) if the technique is ineffective on males.[2]

---

[2] Again, Plaintiff's remaining challenge is limited to her equal protection claim.  This claim is not a challenge to the use of the Clavicle Notch Technique as an excessive use of force -- and any such claims based on excessive force have already been ruled upon by Judge Ezra, who determined that the use of force on Plaintiff was reasonable as a matter of law.  Doc. No. 190, July 30, 2012 Order at 26 ("[I]n weighing the [*Graham v. Connor*, 490 U.S. 386 (1989),]

(continued...)

Plaintiff argues that Judge Ezra has already found a genuine issue of material fact in a previous hearing by questioning why other agencies do not use "neck strikes" on women.  Doc. No. 198, Pl.'s Opp'n at 2.  But, even if Judge Ezra made these comments, the July 30, 2012 Order granted summary judgment in favor of Defendant on Plaintiff's excessive force claim, and specifically allowed Defendant to re-new its Motion as to the equal protection claim.  The question here is whether Defendant's written policy (assuming it is a gender-based classification), violates equal protection.  And the court concludes that Plaintiff's novel theory of an equal protection violation falls short.[3]

Defendant is entitled to summary judgment on the only remaining claim in Plaintiff's Fourth Amended Complaint.

---

[2](...continued)
factors, the Court concludes that the force used to restrain Plaintiff was not objectively unreasonable under the circumstances.").  Thus, Plaintiff's post-hearing submission (a "medical review questionaire (sic)" and a page proffered to be from a Department of Justice investigation of the Puerto Rico Police Department, Doc. No. 207) -- relevant at best only to an argument that "neck strikes" can lead to use of excessive force -- has no bearing on the limited equal protection issue now before the court.

[3]  Defendant also argues that a gender-based equal protection claim is time-barred because Plaintiff did not raise it until she filed her Third Amended Complaint on January 7, 2011 -- well over four years after the subject July 9, 2006 incident.  Although it appears likely that the claim would relate back to the original Complaint for purposes of Federal Rule of Civil Procedure 15(c)(1), the court need not reach whether the claim is time-barred because the court grants Defendant's Motion for Summary Judgment on the merits.

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's Motion for Summary Judgment.  Doc. No. 188.  Because no claims remain, the Clerk of Court shall enter judgment in favor of Defendant and close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 11, 2013.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Stephens v. Cnty. of Haw. Police Dep't.*, Civ. No. 09-00484 JMS-KSC, Order Granting Defendant County of Hawaii Police Department's Motion for Summary Judgment